UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| STAHR D. ASHURST, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> JP MORGAN RETIREMENT PLAN SERVICES, LLC, *et al.*, <br><br> Defendants. | Case No. <br><br> NOTICE OF REMOVAL |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

PLEASE TAKE NOTICE that Defendants J.P. Morgan Retirement Plan Services, LLC, JP Morgan Chase & Co., J.P. Morgan Investment Management, Inc., J.P. Morgan Invest Holdings, LLC, David Embry, Jennifer Mendicki O'Neill, and James E. Staley ("Defendants"), by and through their counsel, remove the above-entitled action, *Stahr D. Ashurst, et al. v. J.P. Morgan Retirement Plan Services, LLC, et al.*, Case No. 1216-CV23784 ("*Ashurst*" or the "Lawsuit"), from the Circuit Court of Jackson County, Missouri, Sixteenth Judicial Circuit, to this Court pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446. Removal is based on the following:

### REMOVAL UNDER ERISA

**A. Introduction**

1. This Lawsuit is one of three state court proceedings instituted by Rouse, Hendricks, German, May P.C. that attempt through "artful pleading" to avoid exclusively federal ERISA jurisdiction. Despite these procedural machinations, as explained below, this Lawsuit is

completely preempted by ERISA and may be brought, if at all, only as an ERISA action in federal court.

2. The state court proceedings follow by several months a putative ERISA class action, *Whitley v. J.P. Morgan Chase & Co., et al*, No. 12-cv-2548, (S.D.N.Y.) ("*Whitley*"), filed on April 3, 2012 and echo claims asserted in *Whitley* that J.P. Morgan Chase & Co., J.P. Morgan Chase Bank, N.A., J.P. Morgan Investment Management Inc., and J.P. Morgan Retirement Plan Services breached their alleged ERISA fiduciary duties by mismanaging and misrepresenting a variety of stable value funds that J.P. Morgan Chase Investment Management or J.P. Morgan Chase Bank, N.A. offered to its ERISA plan clients. (*Whitley* Dkt. 1 and 45-1.)

3. Rouse Hendricks filed its first lawsuit mimicking *Whitley* on July 31, 2012 in the Circuit Court of Jackson County, Missouri on behalf of several hundred individual plaintiffs who had invested in a J.P. Morgan Chase Bank, N.A. stable value fund through their ERISA plan. *See Adair v. J.P. Morgan Chase & Co., et al*. ("*Adair*"). The *Adair* defendants timely removed the matter to the United States District Court for the Western District of Missouri because the state court action was completely preempted by ERISA and because the Western District had diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). *See Adair v. J.P. Morgan Chase & Co.*, 12-cv-1120 (W.D. Mo.). Rouse Hendricks then immediately voluntarily dismissed the *Adair* action. (*Adair* Dkt. 4.)

4. Shortly thereafter, Rouse Hendricks filed this materially identical Lawsuit in Jackson County Circuit Court on behalf of 73 plaintiffs who participated in the same ERISA plan claiming that the same defendants misrepresented and mismanaged the same stable value fund offered through their ERISA plan. *See Ashurst* Petition (attached as Exhibit A). Rouse Hendricks' suit in *Ashurst* on behalf of less than 100 plaintiffs was undoubtedly an attempt to

avoid CAFA removal, as confirmed by the subsequent filing of a third lawsuit in state court on behalf of a group of less than 100 plaintiffs (all but one of whom were Plaintiffs in *Adair*) that repeats the allegations of the *Adair* and *Ashurst* lawsuits. *See Adams v. J.P. Morgan Chase & Co.*, Case No. 1216-CV25270. In addition, despite the centrality of ERISA assets, fiduciaries, and fiduciary duties to the alleged claims, Rouse Hendricks included a "disclaimer" – which asserted that "Plaintiffs do not assert any claim against fiduciaries as defined by ERISA" and that "[n]one of the defendants exercise or exercised discretionary authority or control over management of the Plan or its assets" – in an attempt to avoid removal under ERISA's complete preemption doctrine. *See Ashurst* Petition ¶ 20.

5. A week later, Rouse Hendricks filed a First Amended Petition in *Ashurst* (attached as Exhibit B). Although the Lawsuit continued to be predicated on Defendants' alleged mismanagement of ERISA plan assets and "misrepresentation of ERISA plan investment options, the amendment purported to delete any such allegations. Thus, where the Petition had alleged that "defendants caused the JPM Product to purchase proprietary mortgage assets" – an allegation directly at odds with the disclaimer that no defendant "exercised discretionary authority or control over management" of ERISA assets – the First Amended Petition rephrased the paragraph into the passive voice to disguise this fact: "The JPM Product contained proprietary mortgage assets . . . ." *Compare* Petition ¶ 53 *with* First Am. Petition ¶ 53.

6. Rouse Hendricks sought leave on September 28, 2012 to file a Second Amended Petition in *Ashurst* (attached as Exhibit C).[1].

7. None of this "artful pleading" changes the fact that the Lawsuit alleges a scheme to mismanage and misrepresent ERISA plan assets that Plaintiffs can only "invest" in through

---

[1] Rouse Hendricks served interrogatories and documents requests on Defendants (copies of which are attached as Exhibits D and E). The state court docket and filings are attached as Exhibit F.

3

5318446 v1

Case 4:12-cv-01244-BP   Document 1   Filed 10/11/12   Page 3 of 14

their ERISA plan. As such, it is a civil action over which this Court has original and exclusive jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e), and which may be removed to this Court pursuant to 28 U.S.C. § 1441(b).

**B.     ERISA Complete Preemption**

8.    Any state-law cause of action that duplicates, supplements, or supplants ERISA's civil enforcement mechanism is completely preempted and may be removed to federal court. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987); *see also Neumann v. AT&T Commcn's, Inc.*, 376 F.3d 773, 780-81 (8th Cir. 2004).

9.    A claim does not avoid ERISA preemption simply because it seeks a remedy not authorized by ERISA or even because ERISA does not provide a remedy for the claim at all. *See, e.g., Davila*, 542 U.S. at 214-15 ("Nor can the mere fact that the state cause of action attempts to authorize remedies beyond those authorized by ERISA [§ 1132(a)] put the cause of action outside of the scope of the ERISA civil enforcement mechanism.").

10.   Complete preemption is an exception to the "well-pleaded complaint" rule, and an action is removable even if an ERISA claim does not appear on the face of the complaint. *Davila*, 542 U.S. at 207. Indeed, a plaintiff cannot use artful pleading to avoid preemption. *Hull v. Fallon*, 188 F.3d 939, 942 n.5 (8th Cir. 1999) ("the district court properly looked beyond the four corners of Hull's pleadings and considered the defendant's notice of removal to determine whether Hull, by artful pleading, sought to deny the defendants' right to a federal forum."). To determine whether a claim is completely preempted, a court should instead examine the nature of the claims and not simply accept a plaintiff's characterization of his or her complaint, because "distinguishing between pre-empted and non-pre-empted claims based on the particular label

affixed to them would elevate form over substance and allow parties to evade the pre-emptive scope of ERISA simply by relabeling their contract claims as claims for tortious breach of contract." *Davila*, 542 U.S. at 214-15.

**C.     ERISA Completely Preempts The Lawsuit**

11.     Despite Rouse Hendricks' repeated attempts to "artfully" plead around it, Plaintiffs' claims fall within the scope of ERISA § 502(a), 29 U.S.C. § 1132(a) and are completely preempted.

12.     An ERISA plan, the management of ERISA plan assets, and compliance with ERISA fiduciary duties are all central to Plaintiffs' alleged claims. Moreover, the Lawsuit seeks state law remedies for acts that, by definition, would be ERISA breaches of fiduciary duty (if they actually occurred) remediable under ERISA sections 502(a)(2) and/or (a)(3), 29 U.S.C. § 1132(a)(2), (3). Indeed, the Lawsuit seeks to recover, under state law, money to be deposited into Plaintiffs' individual ERISA plan accounts – *i.e.* increased ERISA plan benefits. In short, the Lawsuit plainly seeks to "duplicate," "supplement," or "supplant" ERISA's carefully crafted remedial scheme.

            **(i)     Plaintiffs' ERISA Plan And The Stable Asset Income Fund**

13.     Plaintiffs are employees of the Government Employees Health Association and participants in an ERISA plan sponsored by their employer: the Pension Plan and Trust of the Government Employees Health Association, Inc. ("GEHA Plan" or "Plan").

14.     Defendant J.P. Morgan Chase & Co. ("JPMC & Co."), through its subsidiaries, provides investment products, investment management, and recordkeeping services to employer-sponsored retirement plans, including the GEHA Plan. Declaration of Katherine Downing in Support of Notice of Removal, filed herewith ("October 10, 2012 Downing Decl."), ¶ 2.

5

5318446 v1

Case 4:12-cv-01244-BP    Document 1    Filed 10/11/12    Page 5 of 14

15. The GEHA Plan is a defined contribution plan governed by ERISA. *See* Exhibit A to Declaration of Katherine Downing in Support of Notice of Removal, Dkt. 1-5 in *Adair v. J.P. Morgan Chase & Co.*, 12-cv-1120 (W.D. Mo.) ("August 29, 2012 Downing Decl.") (attached as Exhibit G); *see* 28 U.S.C. § 1002(34). The GEHA plan provides for the establishment of individual accounts for each of the state law plaintiffs under the plan to which cash contributions made by GEHA are credited and maintained. The GEHA Plan allows participants to direct the investment of the funds in their individual Plan accounts among a "menu" of investment options selected by the GEHA Plan's fiduciaries. August 29, 2012 Downing Decl., Ex. A at 21-22.

16. J.P. Morgan Chase Bank, N.A., ("JPMC Bank") is the trustee of a commingled pension trust fund called the Stable Asset Income Fund ("SAIF") (also referred to by Plaintiffs as the "JPM Stable Value Product" or "JPM Product"). August 29, 2012 Downing Decl., Ex. C (Declaration of Trust). Only certain tax-qualified ERISA regulated plans and tax qualified governmental plans may invest in SAIF. *Id.*, Ex. C, § 1.3(e) & Art. II at pp. 5-6.

17. The GEHA Plan fiduciaries have selected the SAIF as one of the investment options in the GEHA Plan. August 29, 2012 Downing Decl., Ex. B (Participation Agreement). The ERISA plan assets held by SAIF, including the GEHA Plan's proportionate interest in the SAIF are deemed to be ERISA plan assets. *See* 29 C.F.R. § 2510.3-101 (h)(ii) (plan's interest in common or collective trust are considered plan assets).

18. According to the Second Amended Petition, Plaintiffs are employees of GEHA who invested in the SAIF from approximately 2008 to 2010. (Second Am. Pet. ¶ 19.) Because investment in SAIF was available to Plaintiffs only under the GEHA Plan, Plaintiffs' investment in the SAIF is subject to regulation under ERISA.

### (ii) The Lawsuit's Allegations

19. The Second Amended Petition alleges a conspiracy in which Defendants and their affiliates engaged in a fraudulent scheme designed to induce Plaintiffs to invest their GEHA Plan assets in SAIF so that Defendants could earn profits from the fees charged on those investments. More specifically, Plaintiffs allege that Defendants "conspired and acted in concert to represent to Plaintiffs and the Plaintiffs' agents that [SAIF] would give superior return, superior market-to-book value and at the same time employed less risk than other stable value products, when in fact it contained riskier, lower quality mortgages and other debt instruments, and riskier private, self-rated mortgages with overstated market value." (Second Am. Pet. ¶ 3.)

20. This alleged scheme had two pieces – (1) alleged mismanagement of SAIF assets, and (2) intentional misrepresentations regarding SAIF. Thus, Plaintiffs allege that: "JPM's sales ploy was a ruse. While JPM touted the conservatism of its JPM Product, JPM in fact used its JPM Stable Value Product as a vehicle for placement of mortgages and other debt instruments having a higher risk (both liquidity and credit risks) and lower quality, hoping that by taking this hidden risk it could gain a higher yield. . . . [W]hile defendants sold the JPM Product as a stable value fund, defendants were in fact diverting a substantial portion of the assets of the JPM Product into unduly risky mortgage-backed assets that were in many cases, generated, priced and even self-rated by a JPM affiliate company." (Second Am. Pet. ¶¶ 8-9.)

21. Accordingly, the alleged scheme is wholly dependent on the supposed mismanagement of SAIF – *i.e.* the mismanagement of ERISA plan assets and the Defendants' alleged representations regarding the management of these ERISA plan assets. Through a series of amendments, Plaintiffs have attempted to remove any contention that the J.P. Morgan defendants they are suing exercised discretionary management over ERISA assets. But their

7

5318446 v1

Case 4:12-cv-01244-BP   Document 1   Filed 10/11/12   Page 7 of 14

amendments are not as "artful" as they hoped; Plaintiffs still allege that "JPM in fact used [SAIF] as a vehicle for placement of mortgages and other debt instruments having a higher risk . . . and lower quality" and that "defendants were in fact diverting a substantial portion of the assets of the [SAIF] into unduly risky mortgage-backed assets that were in many cases, generated, priced and event self-rated by a JPM affiliate company." (*See* Second Am. Pet. ¶¶ 8-9; *see also id.* ¶ 32) ("all references herein to "JPM" or to "JP Morgan" are inclusive of and by definition include all defendants"). These allegations plainly contend that the Defendants exercised discretionary control over the ERISA plan assets held in the SAIF – an allegation that, if true, would make them ERISA fiduciaries. *See* 29 U.S.C. § 1002(21)(A)(i). In addition, the Lawsuit alleges that Defendants mismanaged SAIF's assets by purchasing overly risky mortgage assets that ultimately hurt the fund's returns – claims that fall squarely within ERISA section 502(a). (*See* Second Am. Pet. ¶ 50) ("Had the JPM Product been as represented, and had not been invested in unduly risky mortgage debt with significant undisclosed fees, the JPM Product's yielded returns from the last quarter of 2008 to date would have been substantially higher.").

22. Furthermore, although Plaintiffs carefully chose not to sue JPMC Bank, they allege that JPMC Bank "assumed the role of Trustee and ERISA fiduciary" based on its management of SAIF. (*See* Second Am. Pet. ¶ 24.) While they try to "wall off" JPMC Bank's fiduciary status by not naming it as a defendant, their far-fetched conspiracy allegations are not so easily pigeon-holed. Plaintiffs contend that JPMC & Co. – the corporate parent of JPMC Bank – is liable in part "based on respondeat superior principles," and that all of the corporate defendants "are alter egos of JPMRPS and operate as an instrument of JPMRPS to achieve profit goals . . . ." (*See* Second Am. Pet. ¶¶ 28, 32.) Plaintiffs cannot allege a conspiracy controlled by defendant J.P. Morgan Retirement Plan Services that is predicated on alleged mismanagement,

of ERISA plan assets (and alleged misrepresentation thereof) and then avoid ERISA by simply not naming as a defendant the alleged "instrument" of that mismanagement.

23. In addition, though Plaintiffs continuously assert that they are challenging only misrepresentations, this argument does not take their pleading outside of ERISA's zone of complete preemption. On the contrary, if (as Plaintiffs allege) the *Ashurst* defendants in fact made discretionary, intentional misrepresentations regarding the management of ERISA plan assets – clearly an ERISA fiduciary function – they would be acting as ERISA fiduciaries and would be subject to suit under ERISA for breach of fiduciary duty. *See, e.g., Varity Corp. v. Howe*, 516 U.S. 489 (1996).

24. Finally, given the centrality of ERISA plan assets to the Plaintiffs' allegations, even if Plaintiffs did not allege facts that (if true) would make Defendants ERISA fiduciaries, the claims asserted in the Second Amended Petition would still be preempted and removable. *See, e.g., Consolidated Beef Indus., Inc. v. New York Life Ins. Co.,* 949 F.2d 960, 964 (8th Cir. 1991) ("Thus whether NYL is a fiduciary under ERISA or not does not affect our ERISA pre-emption analysis, and we hold CBI's state law claims are pre-empted by ERISA").

25. In short, because Plaintiffs allege claims that seek ERISA benefits (*i.e.* increased ERISA plan account balances), implicate ERISA fiduciaries and fiduciary duties, and attempts to duplicate or supplement ERISA remedies, ERISA completely preempts the claims asserted in the Lawsuit. As a result, this Lawsuit arises under ERISA and is removable to Federal court.

## **REMOVAL UNDER SLUSA**

26. The Lawsuit is also removable under the Securities Litigation Reform Act of 1995 ("SLUSA"), 15 U.S.C. §§ 77p, 78bb. SLUSA provides for the removal of any "covered class action" brought in any state court which is based upon state statutory or common law alleging,

9

5318446 v1

Case 4:12-cv-01244-BP   Document 1   Filed 10/11/12   Page 9 of 14

*inter alia*, a misrepresentation or omission of a material fact "in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b),(c); 15 U.S.C. § 78bb(f)(1), (2).

27. The Lawsuit is a "covered class action" within the meaning of 15 U.S.C. §§ 77p(f)(2) and 78bb(f)(5)(B) because it is a single lawsuit in which damages are sought on behalf of more than 50 persons, and questions of law or fact common to those persons, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons. Furthermore, the Lawsuit is brought in Missouri state court based upon the statutory and common law of Missouri, and alleges a "misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security" for purposes of 15 U.S.C. §§ 77(p)(b), 78bb(f)(1). Accordingly, the Lawsuit is removable under 15 U.S.C. §§ 77p(c) and 78bb(f)(2).

28. The Lawsuit is predicated on the claim that Defendants made misrepresentations that were intended to and did cause Plaintiffs to sell covered securities to purchase interests in SAIF.

29. Immediately before the GEHA Plan fiduciaries added SAIF as an investment option in the GEHA Plan, all of the Plan's investment options were mutual funds, *i.e.* investment companies registered under the Investment Company Act of 1940. *See* October 10, 2012 Downing Decl. ¶ 3; 15 U.S.C. § 77r(b)(2). The Lawsuit alleges that the intentional misrepresentations caused Plaintiffs or their agents (*i.e.*, the GEHA Plan fiduciaries) to "map" over $30 million into SAIF. (*See* Second Am. Petition ¶¶ 7, 31, 48.) In other words, the Lawsuit alleges that the misrepresentations were designed to and did induce Plaintiffs to sell over $30 million in shares in their mutual fund investments (*i.e.*, "covered securities") in order to purchase interests in SAIF.

10

30. Similarly, after the GEHA Plan fiduciaries added SAIF to the Plan's investment menu, all of the GEHA Plan's other investment options were mutual funds. *See* October 10, 2012 Downing Decl. ¶ 4. The Lawsuit's allegations that the supposed misrepresentations caused Plaintiffs to purchase interests in SAIF, therefore, necessarily involve purchases or sales of covered securities, either by inducing Plaintiffs to sell covered securities to fund purchases of SAIF, or by inducing Plaintiffs to purchase SAIF rather than covered securities.

31. The Lawsuit also alleges that Defendants "gated" SAIF which "barred, deterred, or inhibited Plaintiffs" from investing their Plan assets elsewhere. (*See* Second Am. Pet. ¶ 51.) Since all of the GEHA Plan's other investment options were mutual funds, this paragraph alleges that Defendants used a "manipulative or deceptive device or contrivance" to prevent Plaintiffs from purchasing "covered securities." 15 U.S.C. §§ 77p(b), 78bb(f)(1).

32. Finally, to the extent it is not precluded by SLUSA, this Court has supplemental jurisdiction over Plaintiffs' Missouri Securities Act claim pursuant to 28 U.S.C. § 1367.

## OTHER REMOVAL REQUIREMENTS

33. Because Plaintiffs filed this action in the Circuit Court of Jackson County, Missouri, Sixteenth Judicial Circuit, removal to the United States District Court for the Western District of Missouri is proper under 28 U.S.C. § 1441(a).

34. Furthermore, divisional assignment to the Western Division of the Western District of Missouri is appropriate because at least one Plaintiff resides in the Western Division and Plaintiffs allege that their claims arose in the Western Division. *See* Second Am. Pet. ¶ 40; Local Rule 3.1(b).

35. As required by 28 U.S.C. § 1446(b), this notice is filed within 30 days of any Defendant being served with the original Petition. *See* Ex. A.

11

36. All named Defendants have consented to join in the removal of this action to federal court.

37. As required by 28 U.S.C. § 1446(d), Defendants will give notice of this removal to Plaintiffs through their attorneys of record. Defendants will also file a copy of this Notice with the Circuit Court of Jackson County, Missouri, Sixteenth Judicial Circuit, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendants remove this case from the Circuit Court of Jackson County, Missouri, to the United States District Court for the Western District of Missouri.

Dated: October 11, 2012

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: /s/ Joseph M. Rebein
Joe Rebein (Mo. Bar No. 35071)
Jeanne M. Janchar (Mo. Bar No. 51813)
2555 Grand Blvd.
Kansas City, MO 64108
Tel. 816.559.2227
Fax 816.421.5547
jrebein@shb.com
jjanchar@shb.com

                        MORGAN, LEWIS & BOCKIUS LLP

                            Gregory C. Braden
                            1111 Pennsylvania Avenue, NW
                            Washington, D.C. 20004
                            Tel. 202.739.5217
                            Fax 202.739.3001
                            gbraden@morganlewis.com

                            Azeez Hayne
                            1701 Market Street
                            Philadelphia, PA 19103
                            Tel. 215.963.5426
                            Fax 215.963.5001
                            ahayne@morganlewis.com

                    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **NOTICE OF REMOVAL** and accompanying exhibits was served on October 11, 2012, via U.S. mail on the following:

> Randall E. Hendricks
> Lawrence A. Rouse
> ROUSE HENDRICKS GERMAN MAY PC
> 1201 Walnut, Suite 2000
> Kansas City, MO 64106
>
> *Attorneys for Plaintiffs*

        /s/ Joe Rebein
        Joe Rebein

14
5318446 v1
Case 4:12-cv-01244-BP   Document 1   Filed 10/11/12   Page 14 of 14