IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| STAHR D. ASHURST, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:12-cv-01244 |
| | ) |
| J.P. MORGAN RETIREMENT PLAN SERVICES, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants J.P. Morgan Retirement Plan Services, LLC, J.P. Morgan Chase & Co., J.P. Morgan Investment Management, Inc., J.P. Morgan Invest Holdings, LLC, David Embry, Jennifer Mendicki O'Neill, and James E. Staley ("Defendants"), by and through their counsel, submit this memorandum in support of their motion to dismiss the complaint.

**I. INTRODUCTION**

This lawsuit is one of three actions filed by Rouse, Hendricks, German, May P.C. alleging that Defendants made misrepresentations regarding their management of employee benefit plan assets governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, a comprehensive federal statute intended to occupy the field of employee benefit plan regulation. All three separate actions (*Adair*, *Ashurst*, and *Adams*) were filed on behalf of participants in the same ERISA pension plan alleging identical violations related to the same time period and the same ERISA governed investment fund. The actions appear to have been consciously pled with intent to attempt to avoid federal jurisdiction. For example, Rouse Hendricks' first lawsuit, *Adair v. J.P. Morgan Chase & Co.,* No. 1216-CV-19512 (Cir. Ct.

Jackson County filed July 31, 2012) ("*Adair*"), was brought on behalf of several hundred participants in the same ERISA plan (including virtually all of the participants named as plaintiffs in the later filed *Adams* action). After the *Adair* defendants removed the case to federal court based on ERISA preemption and the Class Action Fairness Act ("CAFA"), Rouse Hendricks immediately dismissed *Adair* and filed two new actions (*Ashurst* and *Adams*), splitting the plaintiffs into groups of less than 100, to attempt to avoid federal jurisdiction under CAFA. Rouse Hendricks also attempted to "sanitize" the new complaints to eliminate any reference to ERISA and to specifically disavow any attempt to sue any Defendant in an ERISA fiduciary capacity. Despite these transparent attempts to avoid federal jurisdiction, this lawsuit's substantive allegations inescapably derive from and are based solely on the alleged mismanagement of employee benefit plan assets and misrepresentation thereof, and therefore fall into areas of exclusively federal concern: the regulation of ERISA governed employee benefit plans and fraud in connection with the sale of investments covered by federal securities laws.

Accordingly, the state law claims are expressly preempted by ERISA and precluded by the Securities Litigation Uniform Standards Act ("SLUSA") and, for the reasons detailed below, Defendants respectfully request that the Court grant their motion and dismiss the complaint in its entirety.

## II.  FACTS

Plaintiffs are employees of Government Employees Health Association, Inc.[1] ("GEHA") who are participants in the Pension Plan and Trust of the Government Employees Health Association, Inc. ("GEHA Plan" or "Plan"), an ERISA regulated pension plan sponsored by GEHA. (Dkt. 1-4, Second Am. Pet., ¶ 19.) GEHA makes contributions to the Plan which are

---

[1] Despite its name, GEHA is not a governmental entity; it is a Missouri non-profit corporation.

allocated to individual accounts maintained for each participant under the Plan. (Dkt. 1-10 Ex. A §§ 4, 5.)[2] Plaintiffs do not own the employer contributions held in their accounts and can gain access to them only upon the occurrence of specific events such as retirement or other termination of employment. (Dkt. 1-10 Ex. A §§ 9, 10.) GEHA Plan participants are permitted to direct the investment of amounts allocated to their accounts among investment options selected by the GEHA Plan's fiduciaries, who are also GEHA employees. (Dkt. 1-10 Ex. A § 5.4) One of these funds, known as the Stable Asset Income Fund ("SAIF") (Dkt. 1-4 at ¶ 2), was selected by the GEHA Plan fiduciaries and made available to Plaintiffs as one of the investment options under the GEHA Plan. (*Id.* at ¶ 24.) Defendants are J.P. Morgan Chase & Co. and certain of its subsidiaries and their employees that were allegedly involved in marketing and/or managing SAIF.

SAIF is a bank collective trust fund as described in ERISA § 408(b)(8), 29 U.S.C. § 1108(b)(8), and is established by J.P. Morgan Chase Bank, N.A. ("JPMC Bank"), a subsidiary of defendant J.P. Morgan Chase & Co. *See, e.g.,* J.P. Morgan Chase & Co. 2011 Annual Report at 64.[3] Only certain tax-qualified ERISA regulated plans and tax qualified governmental plans may invest in SAIF. (Dkt. 1-11, Ex. C, § 1.3(e) & Art. II at pp. 5-6, 17 (SAIF Declaration of Trust).) The GEHA Plan fiduciaries have offered SAIF as one of the investment options in the GEHA Plan since 2005. (Dkt. 1-11, Ex. B (SAIF Participation Agreement).) The ERISA plan assets held by SAIF, including the GEHA Plan's proportionate interest in SAIF, are deemed to

---

[2] The Court may consider these materials in deciding this motion. *Enervations, Inc. v. Minn. Mining & Mfg. Co*, 380 F.3d 1066 (8th Cir. 2004) (documents necessarily embraced by the complaint are not matters outside the pleadings); *Mattes v. ABC Plastics, Inc*, 323 F.3d 695, 697 n.4 (8th Cir. 2003) (contracts upon which claims rested were necessarily embraced by the pleadings). In this case, the complaint necessarily embraces the formal documents governing the GEHA Plan and the SAIF, and the Court may consider those documents when ruling on Defendants' motion to dismiss.

[3] Available at http://files.shareholder.com/downloads/ONE/2118797808x0x556139/75b4bd59-02e7-4495-a84c-06e0b19d6990/JPMC_2011_annual_report_complete.pdf (last visited 10/14/2012).

be ERISA plan assets maintained under JPMC Bank's custody and control. *See* 29 C.F.R. § 2510.3-101(h)(ii).

Plaintiffs allege that Defendants and their affiliates conspired to "fraudulently" induce Plaintiffs to invest their GEHA Plan assets in SAIF so that Defendants could earn profits from the fees charged on those investments. (Dkt. 1-4 at ¶ 3.) This alleged scheme had two parts: (1) alleged mismanagement of SAIF assets through investment in "risky" mortgages and mortgage backed securities, and (2) intentional misrepresentations regarding the safety of SAIF's investment strategy. (Dkt. 1-4 at ¶¶ 8-9.) Plaintiffs' (most recent) pleadings avoid any reference to ERISA, instead purporting to bring claims under the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq.*, Missouri common law, and the Missouri Securities Act of 2003, Mo. Rev. Stat. § 409.5-501.

Although Plaintiffs have tried to plead around ERISA, the alleged scheme is entirely dependent on the existence of the ERISA regulated GEHA Plan, Defendants' alleged mismanagement of SAIF – *i.e.,* the mismanagement of the GEHA Plan's assets – and Defendants' alleged misrepresentations regarding the management of those ERISA plan assets to the participants in the GEHA Plan. Thus, Plaintiffs allege that:

> JPM's sales ploy was a ruse. While JPM touted the conservatism of [SAIF], JPM in fact used [SAIF] as a vehicle for placement of mortgages and other debt instruments having a higher risk (both liquidity and credit risks) and lower quality, hoping that by taking this hidden risk it could gain a higher yield. . . . [W]hile defendants sold [SAIF] as a stable value fund, defendants were in fact diverting a substantial portion of the assets of [SAIF] into unduly risky mortgage-backed assets that were in many cases, generated, priced and even self-rated by a JPM affiliate company.

(Dkt. 1-4 at ¶¶ 8-9; *see also id.* at ¶¶ 53, 64.) Plaintiffs claim that the alleged misrepresentations regarding SAIF induced Plaintiffs and/or the Plan fiduciaries to sell over $30 million in mutual fund shares held in their Plan accounts to purchase interests in SAIF (Dkt. 1-4 at ¶¶ 7, 31, 48),

and that Plaintiffs suffered reduced investment returns in SAIF as a result of the supposed mismanagement of SAIF assets. (Dkt. 1-4 at ¶¶ 11, 14, 16, 50, 51, 65-67, 72.)

## III. PROCEDURAL HISTORY

This lawsuit is one of three state court proceedings instituted by Rouse Hendricks that attempt through "artful pleading" to avoid exclusively federal jurisdiction. The state court proceedings were initiated several months after the filing of a putative ERISA class action, *Whitley v. J.P. Morgan Chase & Co.,* No. 12-cv-2548 (S.D.N.Y. filed April 3, 2012) ("*Whitley*"). The *Whitley* plaintiffs allege that J.P. Morgan Chase & Co., J.P. Morgan Chase Bank, N.A., J.P. Morgan Investment Management Inc., and J.P. Morgan Retirement Plan Services breached their alleged ERISA fiduciary duties by investing stable value fund assets owned by ERISA plans (including the GEHA Plan) in "risky" concentrations of mortgages or mortgage backed securities and failing to disclose certain information related to those investments. (*Whitley* Dkt. 1 & 45-1.)

Rouse Hendricks filed its first lawsuit mimicking *Whitley* (but purporting to assert only state law claims) on July 31, 2012 in the Circuit Court of Jackson County, Missouri on behalf of several hundred individual plaintiffs who are current or former employees of GEHA and who participate in GEHA's ERISA pension plan. (*See Adair*, No. 12-cv-1120 (W.D. Mo), Dkt. 1-2.) The defendants timely removed the matter to the United States District Court for the Western District of Missouri because the state court action was completely preempted by ERISA and because the Western District had diversity jurisdiction under CAFA. (*Adair*, Dkt. 1). In response, Rouse Hendricks immediately dismissed the *Adair* action. (*Adair*, Dkt. 4.)

Shortly thereafter, Rouse Hendricks filed this materially identical lawsuit in Jackson County Circuit Court on behalf of 73 plaintiffs who also participated in the same GEHA Plan, claiming that the same defendants misrepresented and mismanaged the same stable value fund (SAIF) offered through their ERISA plan. (*See Ashurst* Petition, Dkt. 1-2) Rouse Hendricks

5

filed suit in *Ashurst* on behalf of less than 100 plaintiffs to avoid CAFA removal, a fact confirmed by the subsequent filing of a third lawsuit in state court on behalf of a group of less than 100 plaintiffs (all but one of whom were Plaintiffs in *Adair*) that repeats the allegations of the *Adair* and *Ashurst* lawsuits. *See Adams v. J.P. Morgan Chase & Co.*, No. 1216-CV25270 (Cir. Ct. Jackson County filed Sept. 28, 2012) ("*Adams*"). In addition, despite the centrality of ERISA governed assets and ERISA fiduciary duties to the claims, Rouse Hendricks contended in a transparent attempt to avoid removal under ERISA's complete preemption doctrine that "Plaintiffs do not assert any claim against fiduciaries as defined by ERISA" and that "[n]one of the defendants exercise or exercised discretionary authority or control over management of the Plan or its assets." (Dkt. at 1-2 ¶ 20.)

Apparently still nervous about federal jurisdiction, a week later, Rouse Hendricks filed a First Amended Petition in *Ashurst* (Dkt. 1-3), in yet another attempt to avoid ERISA preemption. For example, where the Petition had alleged that "defendants caused the JPM Product to purchase proprietary mortgage assets" – an allegation directly at odds with the disclaimer that no defendant "exercised discretionary authority or control over management" of ERISA assets – the First Amended Petition rephrased the paragraph into the passive voice to attempt to disguise this fact: "The JPM Product contained proprietary mortgage assets . . . ." (*Compare* Dkt. 1-2, Petition, at ¶ 53 with Dkt. 1-3, First Am. Petition, at ¶ 53.) Still not confident of their ability to avoid the inevitable, Rouse Hendricks sought leave on September 28, 2012 to file a Second Amended Petition in *Ashurst* in order to add claims for violation of Missouri securities law, hoping to rely on the exception from ERISA's broad preemption for state securities laws. (Dkt. 1-4.) However, none of this "artful pleading" changes the fact that the lawsuit alleges a scheme to mismanage and misrepresent the management of ERISA plan assets, since only the GEHA

6

Case 4:12-cv-01244-SWH   Document 8   Filed 10/17/12   Page 6 of 17

Plan can invest in SAIF, nor can it change the fact that Plaintiffs are asserting state law claims alleging misrepresentations in connection with the sale of covered securities. Thus, on October 11, 2012, Defendants timely removed *Ashurst* to this Court as completely preempted by ERISA and precluded by SLUSA. (Dkt. 1.)

## IV.     ARGUMENT

### A.     ERISA Preempts Plaintiffs' State-Law Claims

In passing ERISA, Congress chose to occupy the entire field of employee benefit plan regulation to ensure uniform national standards in this critical segment of the economy. *See, e.g., Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004) ("The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'"). Thus, ERISA "supersede[s] any and all State laws insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). In substance, Plaintiffs claim that Defendants mismanaged the assets of SAIF, which was offered to them solely through their ERISA plan, and made misrepresentations to Plaintiffs regarding the management of ERISA plan assets held in that fund. ERISA preempts these claims because they undeniably "relate to" an ERISA benefit plan.[4]

A claim "relates to" a plan and is preempted when it "has a connection with or reference to such a plan." *Metro. Life Ins.*, 471 U.S. at 739. The Eighth Circuit uses seven factors to guide

---

[4] ERISA preempts Plaintiffs' claims even though the statutory and common law theories on which they rely are not "aimed" at employee benefit plans. ERISA does not preempt only "state laws specifically designed to affect employee benefits." *Wootten v. Monumental Life Ins. Co.*, 412 F. Supp. 2d 1020, 1023 (E.D. Mo. 2006) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983)). Rather, the "preemption provision was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Metro. Life Ins. Co. v. Mass. Travelers Ins. Co.*, 471 U.S. 724, 739 (1985).

courts in assessing whether a state law "relates to" an ERISA plan and is preempted by Section 1144(a):

> whether the state law (1) negates an ERISA plan provision; (2) affects relations between primary ERISA entities; (3) impacts the structure of ERISA plans; (4) impacts the administration of ERISA plans; (5) has economic impact on ERISA plans; (6) whether preemption of the state law is consistent with other ERISA provisions; and (7) whether the state law is an exercise of traditional state power.

*Eckelkamp v. Beste*, 315 F.3d 863, 870 (8th Cir. 2002). A state law claim need not satisfy all or any specific number of these factors to be preempted. *Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.*, 947 F.2d 1341, 1345 (8th Cir. 1991). Instead, a court must consider the "totality of the state law's impact on the plan – both how many factors favor preemption and how heavily each individual factor favors preemption are relevant." *Id*.

Given Plaintiffs' pleading gymnastics, it is important to note that these factors must be evaluated in light of the substance of the Plaintiffs' allegations, not their form. *See, e.g., Davila*, 542 U.S. at 214 (courts must look beyond "labels" to the substance of the plaintiffs' allegations in deciding ERISA preemption); *Hull v. Fallon*, 188 F.3d 939, 942 n.5 (8th Cir. 1999) (district court may properly look beyond the pleadings to determine whether plaintiff "by artful pleading, sought to deny the defendants' right to a federal forum"). Thus, despite the disclaimers, (Dkt. 1-4 at ¶¶ 20, 24-25), Plaintiffs' have alleged that Defendants were ERISA fiduciaries and that Defendants breached their fiduciary duties.

First, Plaintiffs allege that Defendants mismanaged assets held in SAIF and, therefore, ERISA Plan assets. They allege, for example, that "*JPM . . . used* its JPM Stable Value Product as a vehicle for placement of mortgages and other debt instruments," and that "*defendants* were … diverting a substantial portion of the assets of the JPM Product into unduly risky mortgage-backed assets." (*Id.* at ¶¶ 8-9, 12 (emphasis added).) Thus, Plaintiffs allege that Defendants exercised discretionary control over ERISA plan assets, such as the GEHA Plan assets held in

8

SAIF; which, taken as true for purposes of this motion, makes Defendants ERISA fiduciaries. *See* 29 U.S.C. § 1002(21)(A) (a person is a "fiduciary" with respect to a plan to the extent he "exercises any authority or control respecting management or disposition of its assets").[5]

Second, Plaintiffs allege that Defendants misled them about the safety, structure, and performance of SAIF while mismanaging the Plan assets held in SAIF by investing them in "risky" mortgage backed assets. (Dkt. 1-4 *passim*.) Again, taken as true solely for the purposes of this motion, these allegations contend that Defendants communicated with them about the management of the GEHA plan's assets and administration, an ERISA fiduciary function. *See, e.g., Varity Corp. v. Howe*, 516 U.S. 489, 505 (1996) (defendant acted in an ERISA fiduciary capacity when it allegedly made intentional misrepresentations to plan participants regarding their ERISA plan).

Plaintiffs' claims depend on the existence of an ERISA plan, Defendants' alleged mismanagement of its assets, and the alleged misrepresentation of the same. Not surprisingly the Eighth Circuit's seven factor test demonstrates that ERISA preempts Plaintiffs' state-law claims.

### 1. Plaintiffs' claims will impact relations between primary ERISA entities and the structure of the plan.

The Eighth Circuit has construed factors two[6] and three – the impact on relations between primary ERISA entities and the structure of the plan – to be functionally identical. *Arkansas*

---

[5] Plaintiffs' attempt to avoid ERISA by excluding JPMC Bank as a defendant also fails for other reasons. Plaintiffs contend that J.P. Morgan Chase & Co. – the corporate parent of JPMC Bank – is liable in part "based on respondeat superior principles," and that all of the corporate defendants "are alter egos of JPMRPS and operate as an instrument of JPMRPS to achieve profit goals . . . ." (*See* Dkt. 1-4 at ¶¶ 28, 32.) Plaintiffs cannot allege Defendants controlled a conspiracy predicated on the alleged mismanagement of ERISA plan assets (and alleged misrepresentation thereof) and then avoid ERISA by simply not naming the alleged "instrument" of that mismanagement as a defendant. *Wootten*, 412 F. Supp. 2d at 1023 (suit against plan sponsor for actions of third party conservator was preempted as essentially a suit for breach of fiduciary duty seeking to recover plan benefits).

[6] The first factor, negation of an ERISA plan provision, does not apply here.

*Blue Cross*, 947 F.2d at 1346. Both factors strongly indicate that Plaintiffs' state law claims are preempted.

Plaintiffs' claims directly implicate relations between primary ERISA entities: plan participants (Plaintiffs) and alleged functional fiduciaries (Defendants) because their claims seek to regulate communications between the parties that are subject to ERISA (assuming the truth of the allegations). Moreover, the claims seek to regulate the conduct of Defendants in the administration and management of ERISA plan assets by suing Defendants for allegedly "risky" conduct clearly regulated by ERISA's fiduciary rules. Factors two and three, therefore, strongly favor preemption.

### 2. Plaintiffs' claims will impact plan administration.

Plaintiffs' claim that Defendants misrepresented management of the GEHA Plan assets will necessarily impact the administration of the Plan. "[M]aking intentional misrepresentations about plan benefits . . . is an act of plan administration." *Varity Corp.*, 516 U.S. at 505; *see also Wilbers v. Moneta Grp. Inv. Advisors, Inc.*, No. 406 CV 00005, 2006 WL 1360866, at *6 (E.D. Mo. May 17, 2006) ("Clearly, the state law impacts the administration of the Plan if Defendant is an ERISA fiduciary."). Similarly, the management of an ERISA plan's assets is an act of plan management directly regulated by ERISA §404(a), 29 U.S.C. § 1104(a). One of the principal purposes of ERISA's broad preemption provisions is to ensure uniform administration of plans regardless of varying state laws. *Davila*, 542 U.S. at 208. Subjecting Defendants to suit under Missouri law for alleged actions of plan administration and management that affect their ERISA plan clients nationwide would prevent Defendants from uniformly administering SAIF for its plan investors in the many different states where they reside. *Davila*, 542 U.S. at 208. The fourth *Eckelkamp* factor thus strongly favors preemption.

### 3. Plaintiffs' claims will have an economic impact on their ERISA Plan.

In a defined contribution individual account plan, like the GEHA Plan in which Plaintiffs participate, the plan's investments *are* the mechanism by which plan benefits are *funded* and *determined*. *See* 29 U.S.C. § 1003(34) (defining an individual account plan as one that provides "benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account"). Plaintiffs' challenge to the management of SAIF thus directly implicates their Plan's funding mechanism *and* the amount of benefits to which they will ultimately be entitled. *See, e.g., Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007) (claim challenging imprudent management of plan investment sought plan benefits). The GEHA Plan, not Plaintiffs, owns the assets in their Plan accounts. Should Plaintiffs succeed in recovering alleged losses to their Plan accounts, that recovery will be paid to the Plan (and credited to their Plan accounts), which will clearly have an economic impact on the Plan (as well as each Plaintiff's benefits under the Plan). *Eckelkamp*, 315 F.3d at 870. Accordingly, the fifth *Eckelkamp* factor strongly favors preemption.

### 4. Preemption would be consistent with other ERISA provisions.

Plaintiffs' claims fall squarely within ERISA's civil enforcement provisions applicable to breach of fiduciary duty and benefit claims. First, Plaintiffs repeatedly allege that Defendants made false and misleading statements about SAIF to GEHA Plan participants. (Dkt. 1-4 *passim*.) Although pled in terms of state law, these claims all allege conduct – intentional misrepresentations regarding Plan investments – which, if true, would constitute a breach of fiduciary duty under ERISA. *Varity Corp.*, 516 U.S. at 506. And, though they try to disclaim it, Plaintiffs also allege in substance that Defendants breached ERISA fiduciary duties by mismanaging SAIF. (Dkt. 1-4 at ¶¶ 8-9); 29 U.S.C. § 1002(21) (a person is a fiduciary to the

11

extent he exercises control over plan assets); § 1104 (ERISA fiduciary must prudently manage plan assets). If a fiduciary violates these duties, a participant may bring an action "on behalf of the plan" under Section 1132(a)(2) of ERISA to redress the breach, or individually under Section 1132(a)(3) for appropriate equitable relief. 29 U.S.C. § 1132(a)(2) & (3). These remedial provisions are exclusive, and preempt any state law claims that duplicate, supplement, or supplant them. *See, e.g., Davila*, 542 U.S. at 209, 214-216.

Plaintiffs likewise allege that Defendants' purported mismanagement of SAIF plan assets caused a "substantial diminution in their investment returns on the JPM product," and seek to recover their "actual damages," *i.e.*, the loss to their GEHA Plan balances allegedly caused by Defendants' actions. (Dkt. 1-4 at ¶¶ 16, 83, 103.) Thus, Plaintiffs are seeking to recover for the loss of plan benefits allegedly resulting from Defendants' conduct – a remedy that falls squarely within ERISA's civil enforcement provision. *Harzewski*, 489 F.3d 799 (suit for losses caused by fiduciary mismanagement of plan assets sought plan benefits). Allowing Plaintiffs to use state-law claims to circumvent ERISA's civil enforcement provisions is inconsistent with Congress's intent to make ERISA's civil enforcement remedy exclusive. *Davila*, 542 U.S. at 209, 214-216. The sixth *Eckelkamp* factor clearly supports preemption.[7]

### 5. Preemption would not implicate an area of traditional state power.

Assuming for the sake of argument this factor applies,[8] it favors preemption. States have not traditionally regulated employee benefit plans. *E.g.*, 29 U.S.C. § 1001(a) (Congress enacted ERISA in 1974 in part "owing to the lack of . . . adequate safeguards concerning [plan] operation" and "owing to the inadequacy of current minimum standards"). Nor have they

---

[7] Plaintiffs purport to seek punitive damages. Such damages are not available under ERISA, *see, e.g., Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993), and thus may not be claimed in a state law action that "relates to" an ERISA plan. *E.g., Davila*, 542 U.S. at 216-17.

[8] The Eighth Circuit is "not convinced" that this factor is properly considered in making the preemption determination. *Arkansas Blue Cross*, 947 F.2d at 1350.

12

Case 4:12-cv-01244-SWH   Document 8   Filed 10/17/12   Page 12 of 17

traditionally regulated nationally marketed investment products, such as SAIF. *Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U.S. 71, 83 (2006) (noting that evidence presented in a 1997 Congressional hearing "suggested that . . . state-court litigation of class actions involving nationally traded securities had previously been rare."). On the contrary, Congress has repeatedly expressed its intention that these areas be nationally regulated as exclusively federal concerns. *E.g.*, *Davila*, 542 U.S. at 208; *Dabit*, 547 U.S. at 1509 (discussing Congress's efforts to prevent state law actions from impacting "the market for nationally traded securities").

As the above analysis demonstrates, every relevant *Eckelkamp* factor strongly supports a finding that ERISA preempts Plaintiffs' state law claims. The conclusion is inescapable: ERISA clearly preempts Plaintiffs' attempt to use state law to challenge alleged ERISA fiduciaries' supposed mismanagement of and misrepresentations regarding their ERISA plan's investment in SAIF. 29 U.S.C. § 1144(a).[9]

### B. SLUSA Precludes Plaintiffs' Lawsuit

To prevent attempts to avoid federal jurisdiction after the passage of the Private Securities Litigation Reform Act, Congress chose to preclude certain state-law actions by enacting the Securities Litigation Uniform Standards Act ("SLUSA"). *See, e.g., Dabit*, 547 U.S. at 81-82. Specifically, SLUSA precludes any covered state law class action alleging misrepresentations in connection with the purchase or sale of covered securities. 15 U.S.C.

---

[9] Indeed, for the same reasons, courts routinely find preempted similar state law claims where they relate to an ERISA plan, the management of ERISA plan assets, and disclosure of information to plan participants. *See, e.g., Wilbers*, 2006 WL 1360866, at *5-*4 (state common law claims against plan investment advisor for failure to diversify and prudently invest plan funds preempted); *see also Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 343 (4th Cir. 2007) (state law claims which focused on defendant's management and investment of plan assets preempted); *Dudley Supermarket, Inc. v. Transamerica Life Ins. & Annuity Co.*, 302 F.3d 1, 4 (1st Cir. 2002) (ERISA preempted state law claims relating to failure to disclose adequate information on investment practices, accurate actuarial statements, and that plan was underperforming); *New Jersey Carpenters Annuity Fund v. Meridian Diversified Fund Mgt., LLC*, No. 10 Civ. 5738 (TPG), 2011 WL 1842772 (S.D.N.Y. May 11, 2011) (ERISA preempts state law claims against potential ERISA fiduciaries which arise from plaintiffs' status as ERISA entities); *Heritage Equity Grp. 401(k) Sav. Plan v. Crosslin Supply Co.*, 638 F. Supp. 2d 869, 875 (M.D. Tenn. 2009) (ERISA preempts state law claims related to allegedly misappropriated plan assets).

§ 78bb.[10]  As described below, this lawsuit is a "covered class action" and alleges that Defendants made misrepresentations that induced Plaintiffs to sell "covered securities" in order to purchase interests in SAIF.  As a result, SLUSA precludes the action in its entirety.

This lawsuit is a "covered class action" because it is: (1) a single lawsuit, (2) in which "damages are sought on behalf of more than 50 persons," and (3) "questions of law or fact common to those persons … , without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons." 15 U.S.C. § 78bb(f)(5)(B); (*see generally* Dkt. 1-4).  SLUSA, therefore, bars this action if it alleges misrepresentations "in connection with" the purchase or sale of "covered securities."

The Supreme Court has endorsed a broad interpretation of SLUSA's "in connection with" requirement.  *Dabit*, 547 U.S. at 85.  Thus, "it is enough that the fraud alleged 'coincide with' a securities transaction-whether by the plaintiff or by someone else."  *Id.*; *SEC v. Zandford*, 535 U.S. 813, 825 (2002).  This standard should be "construed flexibly, not technically or restrictively."  *Siepel v. Bank of Am., N.A.*, 526 F.3d 1122, 1127 (8th Cir. 2008).  Although the federal courts of appeals have articulated a number of tests for when misrepresentations "coincide" with the purchase or sale of covered securities, all sweep broadly and clearly encompass the allegations at issue here.  *See, e.g., Romano v. Kazacos*, 609 F.3d 512, 521-22 (2d Cir. 2010) (SLUSA preempts claims that "necessarily allege," "necessarily involve," or "rest on" the purchase or sale of securities); *Roland v. Green*, 675 F.3d 503, 519-520 (5th Cir. 2012) (SLUSA preempts claims where "there is a relationship in which the fraud and the [securities] sale coincide or are *more than tangentially related*") (emphasis in original); *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009) (claims preempted where they "depend" on

---

[10] Because "SLUSA amends the 1933 Act and the 1934 Act in substantially identical ways," this brief will cite the amendments to the 1934 Act for convenience.  *Dabit*, 547 U.S. at 82 n.6.

securities transactions); *Madden v. Cowen & Co.*, 576 F.3d 957, 966 (9th Cir. 2009) (claims preempted where "there is a relationship in which the fraud and the [securities] sale coincide or are more than tangentially related"); *Instituto Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1349 (11th Cir. 2008) (claims preempted where complaint alleges (1) fraud that "induced" the purchase or sale of securities or (2) a fraudulent scheme that "coincided and depended" on the purchase or sale of securities).

Plaintiffs' suit is predicated on the claim that Defendants made misrepresentations that were intended to and did cause Plaintiffs to sell covered securities to purchase interests in SAIF. Immediately before the GEHA Plan fiduciaries added SAIF as an investment option in the GEHA Plan, all of the Plan's investment options were mutual funds, *i.e.*, investment companies registered under the Investment Company Act of 1940. (*See* Dkt. 1-12, October 10, 2012 Downing Decl. ¶ 3.)[11] Plaintiffs allege that the intentional misrepresentations caused Plaintiffs or their agents to "map" (*i.e.*, transfer) over $30 million into SAIF. (*See* Dkt. 1-4 at ¶¶ 7, 31, 48.) In other words, they allege that the misrepresentations were designed to and did induce Plaintiffs and/or the Plan's fiduciaries to sell over $30 million in shares in their mutual fund investments, which are "covered securities,"[12] in order to purchase interests in SAIF.

Similarly, after the GEHA Plan fiduciaries added SAIF to the Plan's investment menu, all of the GEHA Plan's other investment options were mutual funds. (*See* Dkt. 1-12 at ¶ 4.) The Plaintiffs' allegations that the supposed misrepresentations caused Plaintiffs to purchase interests in SAIF, therefore, necessarily involve purchases or sales of covered securities, either by

---

[11] In ruling on a motion to dismiss under SLUSA, a court properly may consider materials outside the pleadings because the SLUSA preclusion decision implicates the court's subject matter jurisdiction. *See, e.g, Romano*, 609 F.3d at 518-19.

[12] "Covered securities" are those that satisfy "the standards for a covered security specified in paragraph (1) or (2) of section 18(b) of the Securities Act of 1933." 15 U.S.C. § 78bb(f)(5)(E). Section 18(b)(2) specifies that securities issued by an investment company registered under the Investment Company Act of 1940 – *e.g.* shares in mutual funds – are "covered." 15 U.S.C. § 77r(b)(2). Thus, shares in mutual funds are "covered securities" under SLUSA.

inducing Plaintiffs to sell covered securities to fund purchases of SAIF, or by inducing Plaintiffs to purchase SAIF rather than covered securities.

Plaintiffs also allege that Defendants "gated" SAIF, which "barred, deterred, or inhibited Plaintiffs" from investing their Plan assets elsewhere. (*See* Dkt. 1-4 at ¶ 51.) Since all of the GEHA Plan's other investment options were mutual funds, this paragraph alleges that Defendants used a "manipulative or deceptive device or contrivance" to prevent Plaintiffs from purchasing "covered securities." 15 U.S.C. § 78bb(f)(1).

These allegations, which contend that Defendants' supposed misrepresentations *induced* Plaintiffs to sell covered securities, and to refrain from purchasing covered securities, "easily" qualify as "in connection with" the sale of covered securities. *Romano*, 609 F.3d at 522 (action intended to induce purchase of covered securities "easily qualifies"); *Instituto De Prevision Militar*, 546 F.3d at 1349 (allegations that fraud induced purchase of covered securities precluded by SLUSA). SLUSA, therefore, precludes this action in its entirety. *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 304 (3d Cir. 2005) ("Under the statutory language, inclusion of these preempted claims within the putative class compels dismissal of the entire action.").

## V. CONCLUSION

For the reasons stated above, Plaintiffs' state-law claims are preempted by ERISA and precluded by SLUSA. Accordingly, the complaint must be dismissed for failure to state a claim.

Dated: October 17, 2012	Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.


By: /s Joe Rebein
    Joe Rebein
    2555 Grand Blvd.
    Kansas City, MO 64108
    Tel. 816.559.2227
    Fax 816.421.5547
    jrebein@shb.com


MORGAN, LEWIS & BOCKIUS LLP

    Gregory C. Braden
    1111 Pennsylvania Avenue, NW
    Washington, D.C. 20004
    Tel. 202.739.5217
    Fax 202.739.3001
    gbraden@morganlewis.com

    Azeez Hayne
    1701 Market Street
    Philadelphia, PA 19103
    Tel. 215.963.5426
    Fax 215.963.5001
    ahayne@morganlewis.com

*Attorneys for Defendants*

DB1/ 71329201