## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| STAHR ASHURST, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 12-01244-CV-W-BP |
| | ) | |
| J.P. MORGAN RETIREMENT PLAN | ) | |
| SERVICES, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court on the Plaintiffs' Motion to Remand, (Doc. 15.) For the following reasons, the motion will be granted.

## I.  Background

Plaintiffs are employees of Government Employees Health Assessment ("GEHA"), and are participants in GEHA's defined-contribution pension plan ("the Plan"). The corporate Defendants are parent company J.P. Morgan Chase & Co., as well as the following subsidiary companies: J.P. Morgan Retirement Plan Services, LLC; J.P. Morgan Investment Management, Inc.; and J.P. Morgan Invest Holdings, LLC. Individual Defendants David Embry, Jennifer Mendicki O'Neill, and James Staley were officers and managers of J.P. Morgan Chase & Co. or its subsidiaries.

Plaintiffs originally filed suit in the Circuit Court of Jackson County, Missouri. Plaintiffs' state-court First Amended Petition alleges Defendants engaged in willful misconduct and made false representations to induce Plaintiffs to invest their plan contributions in Defendants' Stable Asset Investment Fund ("SAIF"). Plaintiffs allege Defendants represented

SAIF as a low-risk and high-yield investment product, but that SAIF actually contained hidden, high risks causing it to perform poorly once the economy downturned in 2008. Plaintiffs allege Defendants induced them to invest in SAIF so Defendants would be unjustly enriched by multiple disclosed and undisclosed fees. The Petition includes counts for violations of Missouri's Merchandising Practices Act, Money Had and Received, Unjust Enrichment, and Fraud. Defendants timely removed, arguing Plaintiffs' state-law claims are preempted by the Employee Retirement Income Security Act ("ERISA"), as well as precluded by the Securities Litigation Uniform Standards Act ("SLUSA"). Plaintiffs move to remand.

## II. Removal and Remand

An action filed in state court may be removed to federal court only if the action could have been originally filed in federal court. 28 U.S.C. §§ 1331, 1441(a)-(b). Whether a case may be removed is a question of federal law to be decided by federal courts. *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assoc. Inc.*, 4 F.3d 614, 618 (8th Cir. 1993). The removing party has the burden of establishing federal subject-matter jurisdiction over the action, and all doubts are to be resolved against federal jurisdiction and in favor of remand. *Cent. Iowa Power Co-op v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009).

Under the "well-pleaded complaint rule," subject-matter jurisdiction exists only when a federal question is presented on the face of a plaintiff's properly pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The well-pleaded complaint rule makes the plaintiff "master of his claim," allowing the plaintiff to avoid federal jurisdiction by exclusively relying on state law in forming the bases for relief. *Id.* "Under the well-pleaded complaint rule, a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint." *Lyons v. Philip*

2

*Morris Inc.*, 225 F.3d 909, 912 (8th Cir.2000) (internal citations omitted). Here, Plaintiffs' Petition alleges only state-law claims and does not allege claims arising under federal law on its face. Therefore, on the face of Plaintiffs' allegations, the Court lacks subject-matter jurisdiction.

However, Defendants attempt to establish federal jurisdiction by invoking a corollary to the well-pleaded complaint rule, the "artful pleading" doctrine. This doctrine holds that "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (citation omitted). The artful pleading doctrine allows removal if federal law completely preempts a state-law claim, because a preempted claim can arise only under federal law, not state law. *Id.* at 471 (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987); *Caterpillar*, 482 U.S. at 393). Defendants argue Plaintiffs have artfully failed to plead federal questions, and that their claims are preempted by ERISA and precluded by SLUSA.

### III. Analysis

The Court addresses Defendants' arguments that Plaintiffs' claims are preempted by ERISA and precluded by SLUSA in turn.

#### A. ERISA Preemption

ERISA is a comprehensive statute that sets certain uniform standards and requirements for employee benefit plans. *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 906-07 (8th Cir. 2005) (citations omitted). ERISA includes expansive preemption provisions, which are intended to ensure that employee benefit plan regulation is "exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citations omitted). At issue here is whether "complete preemption" under ERISA § 502 (29 U.S.C. § 1132) applies.

3

Complete preemption occurs whenever Congress "so completely [preempts] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Prudential*, 413 F.3d at 907 (quoting *Metro. Life Ins. Co.*, 481 U.S. at 63-64). Claims arising under the civil enforcement provision of ERISA § 502 implicate one such area of complete preemption. *Id.* The Supreme Court has explained that a state-law claim is preempted if: 1) the claim could have been brought under ERISA § 502(a); and 2) the defendant's actions implicate no other independent legal duty. *Davila*, 542 U.S. at 210. In removing this action, Defendants argue that Plaintiffs' claims are completely preempted by ERISA § 502(a), 29 U.S.C. § 1132(a), because despite artful pleading, Plaintiffs actually state claims against plan fiduciaries to recover plan benefits.

To establish claims under § 502, Plaintiffs' allegations must be stated against actual Plan fiduciaries or against non-fiduciaries acting in a fiduciary capacity. *Mertens v. Hewitt Associates*, 508 U.S. 248, 252-53 (1993) (ERISA's civil enforcement provisions are "limited by their terms to fiduciaries").[1] Defendants acknowledge that they are not actual Plan fiduciaries, but argue that Plaintiffs effectively allege Defendants acted as fiduciaries such that if proven true, Plaintiffs' claims establish Defendants were fiduciaries.

However, the Court finds that Plaintiffs neither explicitly nor implicitly allege that Defendants acted as fiduciaries. Rather, the Petition claims that Defendants made material misrepresentations to Plaintiffs and that these misrepresentations induced Plaintiffs to invest in Defendants' fund. (Petition, Doc. 1-3, ¶2.) The Petition neither alleges that Defendants were involved in Plan administration or management, nor that Defendants mismanaged fund assets.

---

[1]A person is a fiduciary with respect to a plan to the extent: 1) he exercises any discretionary authority or control respecting the plan's management or disposition of its assets; 2) he renders investment advice for compensation, or has authority or responsibility to do so with respect to any plan property; or 3) he has any discretionary authority or responsibility in the plan's administration. 29 U.S.C. § 1002(21)(A).

4

Simply put, the Petition claims that SAIF was different from what Defendants represented, not that Defendants mismanaged the SAIF assets.

Further, the Court is not persuaded by Defendants' arguments that Plaintiffs' claims, if true, establish that Defendants acted as fiduciaries because an entity making misleading claims must be considered a fiduciary. The cases Defendants cite are distinguishable from the instant case. In both *Braden* and *Kalda*, the Eighth Circuit assumed that the defendants were fiduciaries. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009); *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639 (8th Cir. 2007). Thus, the only issue before the court was whether the defendants' acts constituted breaches of their fiduciary duty. In addition, the proposition from *Kalda* cited by Defendants—that it is a breach of fiduciary duty to affirmatively mislead an ERISA plan participant or beneficiary—does not also stand for the proposition that one who affirmatively misleads an ERSA plan participant is automatically a fiduciary. Likewise, in *Varity Corp.*, the Supreme Court analyzed the defendants' statements to determine whether they were made in the defendants' capacity as employer or fiduciary. *Varity Corp. v. Howe*, 516 U.S. 489 (1996). Only after concluding that the statements were made in a fiduciary capacity did the court analyze whether the statements constituted a breach of fiduciary duty.

The Petition makes no allegation that Defendants made statements in a fiduciary capacity, and Defendants provide no basis from which this Court can conclude otherwise.[2] As a result, the subject matter of the Plaintiffs' state-law claims does not fall within the scope of §

---

[2]The Court also notes that Defendants have effectively disclaimed any fiduciary statuses or acts regarding ERISA plans in their *Whitley* filings. *See Whitley v. J.P. Morgan Chase & Co.*, No. 12-cv-2548, Docs. 20, 50 (S.D.N.Y. 2012) (where Defendants argue they did not serve as fiduciaries, administrators, or managers of the ERISA plan under the terms of "*irrefutable* documents integral to any such allegations — namely the operative recordkeeping agreement" and that "[p]laintiffs fail to allege any facts sufficient to establish that any Defendant had discretionary authority over plan management or administration — i.e., over communications to participants.").

502(a).[3]  Thus, Plaintiffs' Petition is not completely preempted by ERISA, and removal to this Court is rejected on that basis.

## B. SLUSA Preclusion

SLUSA precludes all "covered" state-law class actions that allege: 1) an untrue statement or omission of a material fact; or 2) use of a manipulative or deceptive device or contrivance; 3) "in connection with the purchase or sale of a covered security." *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 636-37 (2006); 15 U.S.C. §§ 77p(b), 78bb(f)(1).  It authorizes removal to federal court of "[a]ny covered class action brought in any State court involving a covered security," as described in the preclusion subsection.  *Id.* (citing 15 U.S.C. § 77p(c)).  A "covered class action" is either one lawsuit for damages on behalf of more than 50 people, or several lawsuits for damages on behalf of more than 50 people that are "joined, consolidated, or otherwise proceed as a single action for any purpose."  *Id.*; 15 U.S.C. § 77p(f)(2)(A).  A "covered security" is one that is traded nationally and listed on a regulated national exchange.  *Id.*; 15 U.S.C. §§ 77p(f)(3), 77r(b), 78bb(f)(5)(E).

Here, the parties dispute whether the alleged misrepresentations and omissions were made "in connection with the purchase or sale of covered security."  The "in connection with" standard is construed flexibly, not technically or restrictively.  *Siepel v. Bank of Am., N.A.*, 526 F.3d 1122, 1127 (8th Cir. 2008) (citing *SEC v. Zandford*, 535 U.S. 813, 819 (2002)).  "[I]t is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else."  *Id.* (citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006)).  However, SLUSA "must not be construed so broadly as to convert every common-

---

[3]Because the Court finds that the Petition does not state claims against ERISA fiduciaries or non-fiduciaries acting as fiduciaries, the Court need not address the contingent inquiry of whether Plaintiffs' seeking disgorgement of fees is a claim for Plan benefits.

law fraud that happens to involve [covered] securities into a violation." *Zandford*, 535 U.S. at 820.

In 2005, the Plan's money market mutual fund investment option was replaced with SAIF.[4] As a result, Plan participants' shares of the money market mutual fund were "mapped," or sold, and then the proceeds were used to purchase interests in SAIF. (Mendicki O'Neill Dec'l, Doc. 22-1, ¶ 3.) Plaintiffs allege that Defendants' misrepresentations began around the time of this "mapping" of $30 million of Plaintiffs' money into SAIF. (Petition, Doc. 1-3, ¶¶ 3, 7, 31, 48.) Plaintiffs allege the misrepresentations continued through 2011, and induced additional cash contributions into SAIF. (*Id.*) As such, Defendants argue SLUSA precludes Plaintiffs' claims because: 1) the 2005 mapping entailed a "sale" of a "covered security;" and 2) Plaintiffs allege they were "gated," or prevented, from transferring SAIF investments to "covered securities."

First, SLUSA preclusion analysis focuses on the security that was bought, sold, or marketed due to fraud, rather than the money used to purchase that security. *Instituto De Prevision Militar*, 546 F.3d at 1352. While Plaintiffs allege Defendants' misrepresentations began around the time some of the Plaintiffs' money was mapped into SAIF, the Court is persuaded by Plaintiffs' argument that the SAIF investments of which the Petition complains are the 2008-2011 annual GEHA contributions into Plaintiffs' Plan accounts, not the 2005 mapping. (Petition, Doc. 1-3, ¶¶ 48, 77.) It is undisputed that Plaintiffs' directing these Plan contributions into SAIF did not implicate a sale or purchase of a covered security. As such, Defendant's first argument for SLUSA preclusion fails.

---

[4]It is undisputed that SAIF, a stable value fund, is not a "covered security," whereas the money market mutual fund in which the Plan was previously invested was a "covered security." (Defs.' Sugg. in Opp., Doc. 22, p. 14, n.9); *See Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1351 n.2 (11th Cir. 2008) ("Because mutual funds are issued by investment companies registered under the 1940 Act, *see United States v. NASD*, 422 U.S. 694 (1975), they qualify as 'covered securities' under SLUSA.").

Second, Plaintiffs make allegations regarding Defendants' fraudulent "gating" practices, which "barred, deterred, or inhibited Plaintiffs or their employer plan administrator from removing their assets from the JPM product and going to stable value funds or other investment products with higher yields." (*See* Petition, Doc. 1-3, ¶ 51.) Defendants argue that other investment options available to Plaintiffs included mutual funds, so any gating prevented investment in a covered security. Even if Plaintiffs were prohibited from individually directing the investment of their Plan accounts out of SAIF, which the parties dispute occurred, Plaintiffs do not allege that they compared SAIF to mutual funds or that Defendants prevented them from investing in mutual funds. Thus, Defendants have merely shown the availability of mutual funds as an investment option in addition to other stable value funds. However, Defendants have not met their burden of establishing that any alleged gating prohibited the purchase of covered securities or "coincided" with a covered security transaction. Therefore, the Court finds that SLUSA does not preclude Plaintiffs' claims. As a result, this Court does not have subject-matter jurisdiction over this case.

## IV. Conclusion

Accordingly, for the foregoing reasons, Plaintiffs' Motion to Remand, (Doc. 15), is **GRANTED** and this case is **REMANDED** to state court. As such, Defendants' Motion to Consolidate, (Doc. 6), and Motion to Dismiss, (Doc. 7), are **DENIED as moot**.

**IT IS SO ORDERED.**

/s/ Beth Phillips _____
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

DATE: May 14, 2013

8